UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.

LAVON PARKS,

    Defendant.

19-CR-87

_____

## DECISION AND ORDER

The defendant, Lavon Parks, has been charged in a superseding indictment with conspiring to possess with intent to distribute and to distribute at least five kilograms of cocaine, 400 grams of fentanyl, and 100 grams of heroin, in violation of 21 U.S.C. § 846 (Count 1); possessing at least 500 grams of cocaine with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2 (Counts 2 and 3); discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count 9); and discharging a firearm causing death, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(j)(1) and 2 (Count 10).  Docket Item 137.

Parks has moved under 18 U.S.C. § 3142(i) to be released temporarily until the COVID-19 pandemic passes, Docket Item 228; in his reply memorandum, Parks raises an additional basis for release, changed circumstances, Docket Item 237.  The government opposes both grounds for release.  Docket Items 233 and 243.  For the reasons below, Parks's motion for release is DENIED.

## PROCEDURAL HISTORY

The Court presumes the parties' familiarity with the procedural history associated with Lavon Parks's release and eventual pretrial detention and will not repeat it here. The details are included in this Court's December 18, 2019 decision and order revoking Magistrate Judge McCarthy's order of release and finding by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community, and by a preponderance of the evidence that no condition or combination of conditions would reasonably assure the defendant's appearance as required. Docket Item 177. On March 5, 2020, the United States Court of Appeals for the Second Circuit affirmed that decision and order and denied Parks's motion for release pending trial.

## APPLICABLE LAW

18 U.S.C § 3142(i) provides, in pertinent part:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

In an April 6, 2020 memorandum to all United States Attorneys, United States Attorney General William P. Barr instructed prosecutors that in addition to conducting the Bail Reform Act analysis under 18 U.S.C. § 3142 and applying the factors and presumptions according to its terms, they also should consider "the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic." *See*

2

April 6, 2020 Memorandum from the Attorney General, *Litigating Pre-Trial Detention Issues During the COVID-19 Pandemic.*

## ANALYSIS AND FINDINGS

**Coronavirus Disease-2019 ("COVID-19") Pandemic**

On March 7, 2020, the Governor of the State of New York declared a disaster emergency in the State of New York in response to the COVD-19 pandemic. On March 13, 2020, the President of the United States issued a proclamation declaring a national emergency in response to the pandemic. As a result, on March 13, 2020, Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, issued an order limiting court operations in the district. In the weeks since March 13, 2020, Chief Judge Geraci has issued several additional orders further restricting access to the courthouse, as well as authorizing both civil and criminal proceedings to be conducted by video or teleconferencing.

In less than four months, 2,101,164 people have been diagnosed with the disease. *See Coronavirus Resource Center*, John Hopkins Univ. & Med. (April 16, 2020, 2:28 AM), https://coronavirus.jhy.edu/. 140,773 have died. *Id*. In the United States, 629,264 have been diagnosed and 26,708 have died. The Centers for Disease Control and Prevention ("CDC") has issued guidance and identified the following people to be at a greater risk for severe illness from COVID-19: people over the age of 65; people who live in a nursing home or long-term care facility; and people of all ages with certain underlying medical conditions, particularly if not well controlled, including those who have chronic lung disease, moderate to severe asthma, serious heart conditions, severe obesity, diabetes, chronic kidney disease undergoing dialysis, and chronic liver

disease, as well as those with conditions causing them to be immunocompromised. *See Centers for Disease Control and Prevention*, (April 16, 2020, 2:45 PM), https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html.

Parks does not allege that he suffers from any condition that would render him a vulnerable person as defined by the CDC.  Rather, Parks urges that the conditions of confinement at the Niagara County Jail are such that it is "an ideal environment for the transmission of contagious disease."  Docket Item 228 at 5.  Both parties concede that there do not appear to be any confirmed cases of COVID-19 among the inmate population at the Niagara County Jail.  While that is something that certainly can change quickly, the Niagara County Jail now appears to be a relatively safe, uncontaminated environment.  Moreover, while incarceration in any prison poses the risks that living in any facility with many inhabitants poses today, those risks alone do not override the reasons for detention or incarceration.  *See, e.g., United States v. Smalls*, No. 20-CR-126-LTS, 2020 WL 1866034 (S.D.N.Y. Apr. 14, 2020).   Therefore, based on the current record, this Court finds that the COVID-19 pandemic is not a sufficiently compelling reason to require Parks's release from pre-trial detention.

**Change in Circumstance**

In his reply memorandum, Parks suggests that there has been a change in the weight of the evidence that should cause this Court to revisit its prior order of detention. In its December 18, 2019 decision and order, this Court described the weight of the evidence against Parks:

> The evidence compiled against Lavon Parks in connection with the alleged drug crimes is substantial.  For example, there are photographs showing him mailing a package

4

> allegedly containing drugs from a post office in Puerto Rico; the government proffered evidence linking him to controlled buys; and he was in the car in which drugs were found when it was stopped in Tennessee.
>
> The evidence linking Lavon Parks to the Turner murder likewise appears strong. Video evidence shows a car apparently belonging to Lavon Parks's girlfriend parking on an adjacent street moments before the shooting took place and a person physically not unlike Lavon Parks leaving the car and approaching the place where the shooting occurred moments before the shots are heard. The government proffered evidence that Lavon Parks's girlfriend lent him her car on the day and at the time of the shooting. Moreover, an individual identified as Lavon Parks is seen in James Parks's truck with two individuals proffered to be drug customers of both Lavon Parks and the murder victim shortly before the shooting, and the government proffers that protection of Lavon Parks's customer base was a motive for the shooting and that the drug customers helped set up the shooting by luring the victim to where the shooting occurred.
>
> In addition, cell phone data places Lavon Parks in the vicinity of the shooting before, during, and after it took place. Ballistics from the scene linked the weapon involved in the shooting to a weapon involved in a non-fatal shooting and recovered two weeks later from Andre Williams, Lavon Parks's half-brother. And the government has proffered that the same firearm was trafficked to the Western District of New York from Pennsylvania by a known associate of Lavon Parks—an associate who has pleaded guilty to an offense related to that trafficking and is awaiting sentencing in Pennsylvania.
>
> As this Court has noted, the strong evidence against Lavon Parks on the drug counts made the decision to release him on conditions a close one. The evidence on the new charges of murder and discharge of a firearm adds even more weight in favor of remand.

Docket Item 177 at 17-18.

   Parks now argues that there are two reasons why the government's proffered evidence is not so strong:  1. the license plate reader evidence provided during

5

voluntary discovery shows Parks's girlfriend's vehicle in Niagara Falls on January 23, 2018, two days after the homicide, and not on January 21, 2018, the day of the homicide; and 2. a person who claims to have been present near the scene at the time of the homicide told the defense investigator that she saw the alleged shooter and did not recognize or identify him as Lavon Parks.[1]  See Docket Item 237 at 6.

In its sur-reply, the government maintains that the weight of the evidence linking Parks to the murder of Kevin Turner remains strong.  Indeed, the government argues that neither the witness's statement to the defense investigator nor the license-plate-reader evidence changes the strength of the government's proof or the weight this Court should give that proof in assessing the danger Parks poses to the community.   Docket Item 243 at 4.

With respect to the new witness upon which the defense relies, the government observes that in addition to the statement provided to the defense investigator, the witness provided other inconsistent statements that make her statement to the defense investigator suspect, to say the least.  Moreover, although this witness was known to the government at the time of the detention hearings and appeals, the government did not rely on any information supplied by this witness in support of its request to have Parks detained.  Id. at 10.  The government therefore argues that the witness's statement does not in any way undermine what it has characterized as objective proof linking Parks to Kevin Turner's murder.  Id.

---

[1] A copy of the witness's statement has been provided to the Court and filed under seal. Docket Item 240.

With respect to the license plate reader, the government notes that the evidence was offered at the detention hearing for the limited purpose of explaining how investigators identified the vehicle that appears in the surveillance videos on January 21, 2018—not, as Parks suggests, to establish the location of the vehicle on that date. For that reason, the government argues, the defendant's observation about the license plate reader is of no moment.

As noted above, in its December 18, 2019 decision and order, this Court found that the weight of the evidence linking Parks to the murder of Kevin Turner was strong. Despite the new evidence the defendant cites, this Court remains persuaded that the weight of the evidence linking Parks to the murder of Kevin Turner remains strong. Accordingly, this Court declines to find that there is good reason to release the defendant under section 3142(i).

## **CONCLUSION**

For the reasons set forth above, the Court finds that Parks has not demonstrated a compelling reason under 18 U.S.C. § 3142(i) to warrant his temporary release from custody. Therefore, Parks's motion for release, Docket Item 228, is DENIED.

SO ORDERED.

Dated:   April 17, 2020
            Buffalo, New York

                                                                *s/ Lawrence J. Vilardo*
                                                                LAWRENCE J. VILARDO
                                                                UNITED STATES DISTRICT JUDGE