UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

LAVON PARKS and
JAMES C. PARKS,

                              Defendants.
_____

**REPORT, RECOMMENDATION
AND ORDER**

19-CR-087(LJV)(JJM)

        Defendants Lavon and James C. Parks are charged, along with five co-defendants, in a ten-count Superseding Indictment [137][1], with a variety of controlled substance and firearms offenses.[2] Before the court are the remaining portions[3] of defendants' omnibus pretrial motions (Lavon Parks [203, 204, 229] and James Parks [109, 202]),[4] as well as the government's cross-motion for reciprocal discovery (government's Consolidated Response [234], pp. 36-37) and to strike [235] defendant Lavon Parks' second pretrial motion [229], which have been referred to me by District Judge Lawrence J. Vilardo for initial consideration [10].

        Having reviewed the parties' submissions [109, 202-04, 229, 234-35, 239] and heard oral argument on April 23, 2020 [249], I recommend that defendants' motions to dismiss

---

[1]    Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]    Defendants Felix Calderon-Valcarcel and Wayne E. Payne have pled [126, 221]; defendant Wilmer Casiano-Perez's pretrial motions were resolved [249]; and the remaining defendants filed no pretrial motions.

[3]    In e-mails to chambers, defendants' counsel confirmed that only those issues I have addressed in this Report, Recommendation and Order remain in dispute.

[4]    Defendant James Parks filed an initial pretrial motion [108] directed at the Indictment, followed by an amended version [109]. Based upon that amendment, I have treated [108] as moot. Since, with the exception of his request to dismiss Count 3 of the Superseding Indictment, defendant's amended pretrial motion [109], which was directed to the Indictment, and his subsequent pretrial motion [202], Which was directed to the Superseding Indictment, appear to be identical, all of my citations are to the latter motion.

Count 3 of the Superseding Indictment be granted, that defendant Lavon Parks' motion for a hearing pursuant to Wade v. United States, 388 U.S. 218 (1967) be denied, and that the government's motion to strike [235] be granted.  I further order that defendants' remaining motions are granted in part and denied in part, and that the government's cross-motion is granted.  An evidentiary hearing on defendants' suppression motions will be scheduled.

## DISCUSSION

**A.    Defendants' Motions to Dismiss Count 3 of the Superseding Indictment**

Count 3 of the  Superseding Indictment [137] alleges that "[o]n or about November 30, 2017, in the Western District of New York, and elsewhere, the defendants, LAVON PARKS a/k/a Dutch, JAMES C. PARKS, and WAYNE E. PAYNE, did knowingly, intentionally, and unlawfully possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2." In moving to dismiss this Count, defendants Lavon and James Parks argue that since the possession did not occur in this District, venue in the Western District of New York is improper. Donahue Affirmation [202], ¶¶20-23; Henry Affidavit [203], ¶¶104-108.

While acknowledging that it "bears the burden of proving that venue is proper", the government argues that venue for Count 3 is proper in this district "because (1) proper venue for Count 1 is in the Western District of New York and 'venue must be laid in a district where all the counts may be tried,' United States v. Saavedra, 223 F.3d 85, 89 (2d Cir. 2000), (2) the defendants' first acts in aiding and abetting the crime of possession with intent to distribute took place in Buffalo, New York when James Parks rented the vehicle and then travelled together

with Lavon Parks and Wayne Payne from the Western District of New York in the vehicle to retrieve the 3½ kilogram supply of drugs, and (3) venue in the Western District of New York is proper because it serves the constitutional and policy interests for which the venue safeguard was originally designed". Government's Consolidated Response [234], p. 3.

   None of the government's arguments are persuasive. Contrary to its first argument, the proper venue for Count 3 must be determined without reference to Count 1, which alleges a conspiracy. Since "each count of an indictment must be treated as if it were a separate indictment", United States v. Hernandez, 980 F.2d 868, 871 (2d Cir. 1992), "when a defendant is charged in more than one count, venue must be proper with respect to each count". United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1188 (2d Cir. 1989). "Thus, the venue potential in a conspiracy case for the prosecutor to choose from is *narrowed* by the substantive counts the government wishes to prosecute". Saavedra, 223 F.3d at 89 (emphasis added).

   "[T]he *locus delicti* of the charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999). The only crime alleged in Count 3 is a violation of 21 U.S.C. §841(a)(1). While Count 3 also mentions 21 U.S.C. §841(b)(1)(B) and 18 U.S.C. § 2, §841(b)(1)(B) is a penalty provision, and §2 "does not define a crime; rather it makes punishable as a principal one who aids and abets the commission of a substantive crime. There can be no violation of 18 U.S.C. §2 alone". United States v. Ruffin, 613 F.2d 408, 417 (2d Cir. 1979).

   "Venue is proper only where the acts constituting the offense - the crime's 'essential conduct elements' - took place." United States v. Tzolov, 642 F.3d 314, 318 (2d Cir. 2011). 21 U.S.C. §841(a)(1) criminalizes the possession of a controlled substance with intent to distribute it. The "act constituting the offense" - the "essential conduct element" for a violation -

is the *possession* of a controlled substance,[5] and "the government has already admitted on multiple occasions that no part of the possession ever occurred in the Western District of New York". Donahue Affirmation [202], ¶22 (with citations to the record). Whether or not defendants may have ultimately intended to possess and distribute the controlled substance in this district is irrelevant to the venue inquiry as to Count 3, because "intent is not conduct . . . . It is the state of mind accompanying an act". Rowell v. Palmer, 2011 WL 1076750, *3 (D. Nev. 2011).

The government's second argument, namely that defendants' "first acts in aiding and abetting the crime of possession" (by renting and driving the vehicle used to pick up the cocaine in Texas), fares no better. Quoting 18 U.S.C. §3237(a), the government argues that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed". Government's Consolidated Response [234], p. 3. However, "the 'offense' mentioned in 18 U.S.C. § 3237(a) is the substantive crime defined in the Code [here, 21 U.S.C. §841(a)(1)] and not the aiding or abetting of it". United States v. Bozza, 365 F.2d 206, 222 (2d Cir. 1966).

"Though §3237 traces an offense from inception to completion . . . it contains no retrospective provision establishing venue in a district in which the defendant performed only acts that preceded the inception of the offense." Beech-Nut, 871 F.2d at 1190. For purposes of the venue analysis, the inception of defendants' crime of possession with intent to distribute cocaine occurred in Houston, Texas, where they picked up the cocaine, and its completion occurred in Hickman, Tennessee, when the cocaine was seized following a traffic stop.

---

[5]    *See* United States v. Thompson, 921 F.3d 263, 266 (D.C. Cir.), cert. denied, 140 S. Ct. 528 (2019) ("possession is an act antecedent to distribution"); United States v. Hensel, 699 F.2d 18, 35 (1st Cir. 1983) ("[p]ossession is conduct").

Government's Consolidated Response [234], p. 7. While venue might properly lie in any district along their route between those two points, it cannot lie in this district, where they never possessed the cocaine in question.

The fact that the vehicle used to retrieve the cocaine may have been rented and driven by the defendants in this district does not confer venue, since acts those were merely preparatory to the crime of possession. *See* Beech-Nut, 871 F.2d at 1190 ("[w]hether the crime be continuing or noncontinuing, venue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense").

The government argues that "venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue". Government's Consolidated Response [234], p. 3, *quoting* United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003). However, Svoboda involved a conspiracy charge under 18 U.S.C. §371, an "essential element" of which is the "commission of an overt act in furtherance of the conspiracy by at least one of the alleged co-conspirators". 347 F.3d at 476.

Here, by contrast, the acts performed by defendants in this district were not elements of the crime of possession, and possession did not occur within this district. *See* United States v. Davis, 666 F.2d 195 (5th Cir. 1982) (cited with approval by Beech-Nut, 871 F.2d at 1190), in which the court reversed convictions under 18 U.S.C. §2 and 21 U.S.C. §841(a)(1) for improper venue:

> "The government argues . . . that although the drugs never physically entered the territorial limits of the Middle District of Georgia the offense began there because: (1) Cochran made arrangements with Mr. Davis to purchase the drugs while Cochran was in Georgia; (2) Cochran began the process of obtaining the drugs while traveling through the Middle District of Georgia; and (3) the parties intended

that the drugs be returned to that district for ultimate distribution at the street level. To adopt this argument would undermine the guarantees of article III and the sixth amendment that defendants will be tried in the state and district where the crime itself was committed. The government had the burden of proving that the conspirators had both possession of and the intent to deliver the methaqualone at the time Mercer and Cochran were in the Middle District of Georgia . . . . This burden was not met since neither the Davises nor Cochran actually or constructively possessed the methaqualone in question until Mercer and Cochran arrived in Florida." 666 F.2d at 200-01.

The government's final argument, that placing venue in this district "serves the constitutional and policy interests for which the venue safeguard was originally designed" (government's Consolidated Response [234], p. 2), is likewise unconvincing. While the government accuses defendants of attempting to "manipulate the law of venue" in order to "sever a significant incident from the Superseding Indictment" (government's Consolidated Response [234], p. 6), their motivation is irrelevant, since the government admits that they have "a constitutional and statutory right . . . to be tried in the state and judicial district in which the crime was committed". Id., p. 2. [6]

While normally "the sufficiency of the evidence is not appropriately addressed by a Rule 12(b) motion", there is an exception to this rule where "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial". United States v. Sampson, 898 F.3d 270, 282 (2d Cir. 2018). The government's factual proffer on the question of venue falls within that exception: since it does not contend - and cannot prove - that

---

[6]     "The Constitution twice safeguards the defendant's venue right: Article III, § 2, cl. 3, instructs that 'Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed'; the Sixth Amendment calls for trial 'by an impartial jury of the State and district wherein the crime shall have been committed.' Rule 18 of the Federal Rules of Criminal Procedure, providing that 'prosecution shall be had in a district in which the offense was committed,' echoes the constitutional commands". United States v. Cabrales, 524 U.S. 1, 6, (1998).

defendants ever possessed the cocaine which is the subject of Count 3 in this district, that Count must be dismissed for improper venue.


**B.      Defendants' Motions to Suppress**

Defendants seek to suppress evidence from a November 30, 2017 stop in the State of Tennessee of a vehicle operated by James Parks in which Lavon Parks was a passenger. Henry Affidavit [203], ¶¶97-103; Donohue Affirmation [202], ¶¶24-37.  Since the government consents to a hearing on these motions (government's Consolidated Response [234], p. 8), a hearing will be scheduled.[7]


**C.      Defendants' Motions for Bills of Particulars**

Fed. R. Crim. P. ("Rule") 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense".  United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).[8]  "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999).  "[T]he burden is upon defendants to show that non-disclosure of the requested particulars would lead to

---

[7]      Although the evidence seized from this stop forms the basis of Count 3, the parties agreed at oral argument that a suppression hearing would still be required, since the evidence from stop is also relevant to Count 1 of the Superseding Indictment.

[8]      Some courts have questioned the double jeopardy justification for granting particularization. *See, e.g.*, United States v. Payden, 613 F.Supp. 800, 816 n. 16 (S.D.N.Y. 1985).

prejudicial surprise at trial or would adversely affect defendants' rights". United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y. 2014).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form". United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). See United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("[i]n determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery"). "Whether to grant a bill of particulars rests within the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

"The necessity of a bill of particulars depends on the nature of the charged crime." United States v. Meregildo, 2012 WL 3834732, *5 (S.D.N.Y. 2012). Although "there is a special concern for particularization in conspiracy cases", United States v. Palmer, 2012 WL 2953659, *3 (W.D.N.Y. 2012) (citing United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988)), "a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge". Barnes, 158 F.3d at 666. See United States v. Reddy, 190 F. Supp. 2d 558, 570 (S.D.N.Y. 2002) ("[c]ourts have granted requests for bills of particulars identifying co-

conspirators in cases where the number of defendants was large, where the alleged conspiracy spanned long periods of time and where the alleged schemes were wide-ranging"). With this standard in mind, I will address defendants' requests for particularization, which center on Count 1 of the Superseding Indictment [137], alleging that:

> "[b]etween in or about May 2017, the exact date being unknown, and on or about March 26, 2019, in the Western District of New York, and elsewhere, the defendants . . . did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and to distribute:
>
> > a. 5 kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance;
> >
> > b. 400 grams or more of a mixture and substance containing N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a Schedule II controlled substance; and
> >
> > c. 100 grams or more of mixture and substance containing heroin, a Schedule I controlled substance", all in violation of 21 U.S.C. §846.

Defendant Lavon Parks seeks the following particularization concerning Count 1:

a. Date, time place when the alleged conspiracy began; and

b. Date when it is alleged he joined and ended in the conspiracy.[9]

Defendant James Parks seeks:

a. "State the exact date, time and place that the offenses connected to [him] allegedly occurred";

b. "State the words/overt acts/conduct of [him], if any, purported to be in furtherance of the conspiracy and with respect to any such words/overt acts/conduct identify the date and location of each";

c. "State the date, location, and quantity of each act of cocaine and/or cocaine base distribution alleged to have been committed by [him] in furtherance of the conspiracy"; and

---

[9]    Although defendant Lavon Park's motion [204] sought a variety of particularization, his counsel identified these requests as remaining in dispute.

d. "If it will be claimed there were multiple conspiracies identify which conspiracies it will be alleged [he] participated in, identify who the participants were in that or those conspiracies, and define the nature of that conspiracy." Donohue Affirmation [202], ¶¶40-41.

In opposing defendants' requests for particularization, the government argues that they "will have full discovery, exculpatory and impeachment material, a witness list, exhibit lists, including 3500 materials, well in advance of trial, they will not be surprised by the evidence against them or be subject to future jeopardy in a way that might otherwise justify ordering any of the particulars that they request". Government's Consolidated Request [234], p. 22. It also argues that the requests impermissibly seek "legal theories and exhaustive evidentiary detail". Id.

Although the Superseding Indictment provides few details of the conspiracy, it is alleged to have spanned less than two years and does not appear to be a complex conspiracy - nor do defendants argue that it is complex. Moreover, defendants do not dispute that they will be provided with ample discovery permitting them to understand the charges against them and to prepare a defense. See United States v. Calvente, 2013 WL 4038952, *2 (S.D.N.Y. 2013) (denying a bill of particulars where "the Government has already provided much, if not all, Rule 16 discovery, and this Court will require it to provide Jencks Act material in advance of trial to apprise the Defendants of the essential facts").

As the government further argues, many of defendants' requests are beyond the scope of a permissible bill of particulars. Government's Consolidated Response [234], pp. 20-22. "As a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly. It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the

Government intends to adduce to prove their criminal acts." United States v. Feola, 651 F.Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989). See also United States v. Mullen, 243 F.R.D. 54, 62 (W.D.N.Y. 2006) ("as the government can prove the existence of a conspiracy through circumstantial evidence, a Bill of Particulars comprised of very specific details is not required for a drug trafficking conspiracy charge").

Thus, "the government need not specify when a particular defendant joined the conspiracy, nor is it required to specify what role each defendant played in the conspiracy . . . . Similarly, to the extent that defendants seek a description of the particular acts for which he or she is being held responsible, or a listing of the acts of which each defendant had knowledge, the case law is clear that the government is not required to provide the information." United States v. James, 2007 WL 914242, *26 (E.D.N.Y. 2007). See also United States v. Nicolo, 523 F. Supp. 2d 303, 317 (W.D.N.Y. 2007), aff'd, 421 Fed. App'x 57 (2d Cir. 2011) (Summary Order) ("[a]s a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars. More specifically, details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial . . . . Likewise, the names of unindicted coconspirators need not be provided"); United States v. Chen, 2007 WL 2244213, *10 (S.D.N.Y. 2007) ("[t]he Second Circuit . . . ha[s] routinely denied requests for Bills of Particulars concerning the 'wheres, whens, and with whoms' of the crime charged"). It is for these reasons that "bills of particulars are frequently deemed inappropriate in cases involving conspiracies". United States v. McGee, 2017 WL 667199, *3 (W.D.N.Y.), adopted, 2017 WL 2880121 (W.D.N.Y. 2017).

At oral argument, defendant Lavon Parks argued that he needed to know the particular dates he is alleged to have been a member of the conspiracy in order to file an alibi

notice, if necessary.  As discussed above, "demands for particular information with respect to

where, when, and with whom the Government will charge the defendant with conspiring are

routinely denied", and defendant's argument does not present a compelling reason to depart from

that general rule.  United States v. McPherson, 2009 WL 4756470, *2 (S.D.N.Y. 2009) (rejecting

a similar request for particularization based on the assertion that it was required in order to

mount an alibi defense).  Therefore, the motions are denied.


**D.      Defendant Lavon Parks' Motion for a Wade Hearing**

Defendant Lavon Parks alleges that in a DEA-6 form produced during discovery,

it was reported that a photograph of him was shown to a confidential source involved in a

controlled buy.  Henry Affidavit [203], ¶109.  He seeks production of that photograph, and

requests a hearing "to address the circumstances surrounding this identification procedure,

including the due process and constitutionality of said identification procedure".  Id., ¶111.

In response, the government alleges that the confidential source "observed the

defendant on a cellphone while another individual called him over the FaceTime application to

order a quantity of controlled substances to be sold to the confidential [source] by this other

party".  Government's Consolidated Response [234], p. 13.  For several reasons, it argues that

the concerns raised by defendant about the out-of-court identification can be addressed at trial

through cross-examination: 1) the identification will be "corroborated with the video recording

of the interaction where the confidential source had an opportunity to see the defendant"; 2) the

identification, which occurred "in a casual, low-stress setting", does not "implicate the concerns

that animate Wade"; and 3) a hearing would not be an efficient use of judicial resources, since

defendant will more likely challenge the testimony of the witnesses present at the encounter,

some of whom have known defendant for a long time, based upon the benefits provided to these

witnesses by the government. Id., pp. 12-15. Alternatively, the government argues that if a hearing is warranted, it can be conducted during the trial. Id., p. 16.

"If there is a very substantial likelihood of irreparable misidentification [from a pretrial identification], the judge must disallow presentation of the evidence at trial." Perry v. New Hampshire, 565 U.S. 228, 232 (2012). Determining whether a witness will be permitted to "identify the defendant at trial normally requires a one-step or two-step inquiry. The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt. If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification. In that circumstance, any question as to the reliability of the witness' identifications goes to the weight of the evidence, not its admissibility." United States v. Maldonado–Rivera, 922 F.2d 934, 973 (2d Cir. 1990).

At the outset, the government shall produce to the defendant the photograph used for the alleged identification made by the confidential source, or explain why it cannot be produced. However, even assuming that the single photograph of defendant shown to the confidential source was unduly suggestive, "an in-court identification is still allowed as long as it is 'independently reliable rather than the product of the earlier suggestive procedures'". United States v. Crumble, 2018 WL 1737642, *2 (E.D.N.Y. 2018) (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990)). At this point, I have no reason to question the government's representations indicating that any in-court identification by the confidential source would be independently reliable.

Therefore, I recommend that defendant's motion for a pretrial Wade hearing be denied. However, "[i]f the government does not adduce facts sufficient to show an independent basis of reliability in its direct examination prior to eliciting an in-court identification,

-13-

[defendant] may renew his motion at that time and [the trial judge] may conduct a reliability hearing outside of the presence of the jury" at that time. Crumble, 2018 WL 1737642 at *2. *See also* United States v. Jenkins, 2017 WL 9485700, *11 (W.D.N.Y. 2017), adopted, 2018 WL 324901 (W.D.N.Y. 2018) ("there is no basis for conducting Wade hearings at this time. However, Government witnesses and summaries of anticipated testimony have not yet been disclosed. When this information is provided, the trial court will be in a better position to determine if a Wade hearing or *voir dire* outside the presence of the jury are necessary").


**E.      Defendant Lavon Parks' "*Pro Se*" Motion and the Government's Motion to Strike**

The government moves to strike defendant Lavon Parks' second pretrial motion [229], because it is *pro se* motion and he is represented by counsel. [235].   It did not otherwise respond to the merits of the motion.

"There is certainly a right to appear *pro se* . . .  as well as a right to appointed counsel". Ennis v. LeFevre, 560 F.2d 1072, 1075 (2d Cir. 1977).  "[H]owever, those rights cannot be both exercised at the same time." Id. *See also* United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989) ("a criminal defendant has no constitutional or statutory right to represent himself as co-counsel with his own attorney").

Ultimately, "[t]he decision to grant or deny 'hybrid representation' lies solely within the discretion of the trial court." Tutino, 883 F.2d at 1141.  However, "[a] court need not permit hybrid representation if a defendant does not offer a compelling reason, or show that the interests of justice would be served by a defendant's supplementation of the legal services provided by his retained counsel". United States v. Pray, 2014 WL 3534010, *11 (W.D.N.Y.), adopted, 2014 WL 4370483 (W.D.N.Y. 2014).

Here, no reason, much less a compelling one, has been proffered for hybrid representation. Defendant is represented by experienced counsel, and I see no reason why counsel's motions [203, 204] require supplementation.

Defendant argues that the motion is not *pro se* because it was "filed by counsel in a Notice of Motion with an exhibit". Defendant's Response [239], p. 2. However, "[a]ny motions should *come from* and be filed by counsel." United States v. Jones, 2016 WL 7336417, *1 (W.D.N.Y. 2016) (emphasis added). While the motion was filed by counsel, it did not come from counsel. Counsel's Affidavit attaching the *pro se* submission merely states that defendant requested counsel to make the submission (Henry Affidavit [229], ¶5), not that he was adopting that submission as his own.

Since it is a *pro se* motion and defendant has offered no reason to permit hybrid representation, I recommend that the government's motion to strike be granted. *See* United States v. Davis, 57 F. Supp. 3d 363, 366 n. 2 (S.D.N.Y. 2014) ("[i]n an affirmation filed by counsel and signed by Chapelle only, Chapelle alleges that the stop of the vehicles was made forcibly . . . . Chapelle's counsel has not briefed these issues and no other defense counsel has made such a request. The Court will not address any legal issues raised solely in Chapelle's *pro se* submission").

In any event, I would recommend denial of defendant's motion even if the government's motion to strike had been denied. Although the government did not respond to the merits of defendant's motion, where that motion is meritless, there is "nothing for the government to waive" by failing to respond. United States v. Florack, 155 F.R.D. 49, 56 (W.D.N.Y. 1994); United States v. Shine, 2018 WL 4627137, *2 (W.D.N.Y.), adopted, 2018 WL 3737877 (W.D.N.Y. 2018).

Many of defendant's arguments center on <u>United States v. Devincio K.D. James,</u> <u>Luis Andino, Jenhsen Rodriguez, *et al*.</u> (17-CR-183(JJM)(LJV)), a prosecution in this District involving the same Assistant United States Attorney.  According to defendant, Count 2 of the Superseding Indictment [137] charging him with possessing 500 grams or more of cocaine on May 26, 2017, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B), arises from a package mailed by him from Puerto Rico to Niagara Falls, New York. Defendant's Memorandum of Law [229-1], p. 4.  He contends that Luis Andino admitted in connection with his plea in 17-CR-183 that "one of his roles in [that drug conspiracy] was to recruit individuals to provide addresses where packages containing cocaine could be shipped from Puerto Rico", and that this constitutes exculpatory evidence supporting his defense that "he was recruited to mail the package on May 26, 2017, but lacked knowledge of the contents and did not know the package contained cocaine or narcotics".  <u>Id</u>.

Defendant argues that this exculpatory evidence was impermissibly withheld from the grand jury.  However, even assuming that it could be construed as exculpatory evidence, "the government had no duty to present exculpatory evidence to the grand jury". <u>United States v.</u> <u>Bove</u>, 888 F.3d 606, 611 (2d Cir. 2018).  *See also* <u>United States v. Sterling</u>, 2019 WL 2006393, *1 (S.D.N.Y. 2019) ("neither the failure to disclose exculpatory evidence nor the presentation of allegedly misleading testimony is sufficient to warrant dismissal of an otherwise valid indictment").

Relying on Mr. Andino's representations, defendant also argues that "[t]he government has failed to offer sufficient evidence of the defendant's own advocacy of and participation in the illegal goals of the conspiracy".  Defendant's Memorandum of Law [229-1], p. 6.  However, "the issue at this stage of the proceedings is whether federal crimes are alleged,

not whether they can be proven". United States v. Huntress, 2015 WL 631976, *3 (W.D.N.Y. 2015). *See also* United States v. Shakur, 560 F. Supp. 347, 349 (S.D.N.Y. 1983) ("the basis for defendants' attack on the indictment amounts to assertions that the government will not be able to prove the indictment's allegations. Obviously, such determinations are to be left until after trial").

Defendant next argues that the prosecutors have "singled out" him and co-defendant James Parks by only charging them in Counts 9 and 10 of the Superseding Indictment [137], with discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and 2, and discharge of a firearm causing death, in violation of 18 U.S.C. §§924(c)(1)(A)(iii), 924(j)(1), and 2. Defendant's Memorandum of Law [229-1], p. 11. He contends that it "appears fairly inferable that the Government prosecutors may well have intentionally prosecuted [17-CR-183] separately to avoid charging them with murder/discharging a firearm". Id.

"[B]ecause the United States Attorneys are charged with taking care that the laws are faithfully executed, there is a 'presumption of regularity support[ing] their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties'". United States v. Sanchez, 517 F.3d 651, 671 (2d Cir. 2008) (*quoting* United States v. Armstrong, 517 U.S. 456, 464 (1996)). "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." Armstrong, 517 U.S. at 463. Since "[a] selective-prosecution claim asks a court to exercise judicial power over a 'special province' of the Executive", the standard for demonstrating such a claim "is a demanding one". Id. at 463–64.

Specifically, to support a defense of selective prosecution, the defendant must make at least a prima facie showing "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights". United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974). Standing alone, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation". Oyler v. Boles, 368 U.S. 448 (1962).

Defendant  has not demonstrated that his co-defendants or the defendants in 17-CR-183 could be charged in Counts 9 and 10 of the Superseding Indictment, that the government does not generally charge those crimes, or that the decision to charge him and James Parks in Counts 9 and 10, but not others, was based on a constitutionally impermissible reason. See United States v. Kimmons, 2018 WL 6729255, *2 (W.D.N.Y.), adopted, 2018 WL 6241307 (W.D.N.Y. 2018).

In conclusory fashion, defendant further argues that the prosecutors "have engaged in deliberate and prejudicial preindictment delay". Defendant's Memorandum of Law [229-1], p. 17.  However, without further factual or legal development, I am unable to discern a valid basis for that motion.

Finally, defendant argues that in a March 12, 2020 newspaper article published by the Niagara Falls Gazette concerning co-defendant Wayne Payne's guilty plea, the government "deliberately spread . . . inappropriate and prejudicial pretrial publicity".  Defendant's Memorandum of Law [229-1], p. 20.  Absent any allegation that the government disclosed sealed

-18-

materials, I find no improper conduct by the government. During *voir dire* jurors may be asked about their knowledge of this case to prevent any prejudice.

**F.    Defendant James Parks' Motion for Production of Grand Jury Minutes**

Defendant James Parks seeks disclosure of the grand jury transcripts in this case, in part, to support his motion to support to dismiss Count 3 of the Superseding Indictment. Donohue Affirmation [202], ¶38. As I have recommended that Count 3 be dismissed, I consider this argument to be moot.

Defendant also requests that the "grand jury testimony from Tennessee, the pre-trial testimony from Tennessee, and the federal grand jury minutes be turned over to the court to review for inconsistencies". Id., ¶39. In response, the government argues that production of such materials is covered by the government's 18 U.S.C. §3500 (Jencks Act) obligation, which it "intends to comply [with] as prescribed by statute and ordered by the District Court conducting the trial". Id., ¶25.

The "strong presumption of regularity in grand jury proceedings . . . . cannot be outweighed by conclusory or speculative allegations of misconduct". United States v. Morgan, 845 F. Supp. 934, 941 (D. Conn. 1994), aff'd, 51 F.3d 1105 (2d Cir. 1995). *See* United States v. Sandford, 2016 WL 791435, *4 (W.D.N.Y.), adopted, 2016 WL 3951217 (W.D.N.Y. 2016) ("[u]nspecified allegations of impropriety or mere speculation are not sufficient to satisfy this heavy burden"). Given this demanding standard, "[d]isclosure . . . will be denied in all but extraordinary circumstances". Morgan, 845 F. Supp. at 941. *See* United States v. Castiglia, 1987 WL 30591, *1 (W.D.N.Y. 1987) ("[d]isclosure of grand jury minutes is extraordinary relief").

Given defendant's speculative assertion about the existence of "inconsistencies" in the various testimony, coupled with the government's representations about its Jencks Act

obligations, which will result in the production of any inconsistent testimony by the government's witnesses for use at trial, the motion is denied.

**G.      The Government's Motion for Reciprocal Discovery**

The government cross-moves for the production of reciprocal discovery pursuant to Rule 16(b).  Government's Consolidated Response [234], pp. 36-37.  "Rule 16 . . . imposes reciprocal discovery obligations on defendants." United States v. Smith, 985 F.Supp.2d 506, 522 (S.D.N.Y. 2013). Since defendants do not oppose this motion, it is granted.

**CONCLUSION**

For these reasons, I recommend that defendants' motions to dismiss Count 3 of the Superseding Indictment (Henry Affidavit [203], ¶¶104-08; Donohue Affirmation [202], ¶¶20-23) be granted; that defendant Lavon Parks' motion for a Wade hearing (Henry Affidavit [203], ¶¶109-11) be denied; and that the government's motion to strike [235] defendant Lavon Parks' *pro se* motion [229] be granted. I further order that defendants' remaining motions are granted in part and denied in part, and that the government's cross-motion (government's Consolidated Response [234], pp. 36-37) is granted.  An evidentiary hearing on defendants' suppression motions (Henry Affidavit [203], ¶¶97-103; Donohue Affirmation [202], ¶¶24-37) will be scheduled.

Unless otherwise ordered by District Judge Vilardo, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by May 15, 2020.  Any requests for extension of this deadline must be made to District Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

-20-

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated:  May 1, 2020

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge