UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

LAVON PARKS and JAMES C. PARKS,                    19-CR-87-LJV-JJM
                                                   DECISION & ORDER
Defendants.

_____

On December 29, 2023, a jury convicted the defendants, Lavon Parks ("Lavon")

and James C. Parks ("James"), of various drug and firearm offenses.[1]  *See* Docket Item

1057.  More specifically, the jury convicted both Lavon and James of conspiring to

possess narcotics—including at least 5 kilograms of cocaine, at least 400 grams of

fentanyl, and at least 100 grams of heroin—with the intent to distribute them (count 1);

discharging a firearm in furtherance of a drug trafficking crime (count 4); and

discharging a firearm causing death (count 5).  *See id.*  The jury also convicted Lavon of

attempting to possess 500 grams or more of cocaine with the intent to distribute it

(count 2) and possessing a firearm in furtherance of a drug trafficking crime (count 3).

*See id.*  This Court subsequently granted Lavon's motion for a judgment of acquittal

under Federal Rule of Criminal Procedure 29 on count 2 based on improper venue.

*See* Docket Item 1237 at 15-22.

The United States Probation Office filed a Presentence Investigation Report

("PSR") for each defendant calculating the United States Sentencing Guidelines

---

[1] Because the defendants have the same last name, the Court will refer to them
by their first names solely for ease of reference.

("U.S.S.G." or "Guidelines") range.  Docket Items 1232 (James)[2] and 1241 (Lavon).

Both PSRs applied the first-degree murder cross reference.  Docket Item 1232 at ¶ 37;

Docket Item 1241 at ¶ 41; *see* U.S.S.G. § 2D1.1(d)(1) (instructing that if victim was

killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had

such killing taken place within the jurisdiction of the United States, apply section 2A1.1

(first-degree murder) if resulting offense level is greater than that determined under

section 2D1.1).  The first-degree murder cross reference results in a base offense level

of 43, *see* U.S.S.G. § 2A1.1(a), which carries a Guidelines range of life regardless of

the criminal history category, *see id.*, Ch. 5 Pt. A, Sentencing Table.

Each defendant objected to his PSR's application of the first-degree murder

cross reference.  *See* Docket Item 1249 at 7-20; Docket Item 1257 at 4-5; Docket Item

1270 at 36-38.  Each also objected to his PSR's inclusion of various drug transactions

as part of his relevant conduct.  *See* Docket Item 1249 at 20-33; Docket Item 1257 at 2-

4; Docket Item 1270 at 30-34.  In addition, Lavon argued that his criminal history

category should be reduced because it "overrepresents the seriousness of his past

record."  *See* Docket Item 1249 at 33-37.  And James argued that if the Court does not

apply the first-degree murder cross reference, he is entitled to a downward adjustment

under U.S.S.G. § 3B1.2 for being a minimal participant.  *See* Docket Item 1270 at 35-

36.[3]

---

[2] James's report was revised several times.  *See* Docket Items 1174 and 1230.
Docket Item 1232 is the most recent version.

[3] In addition, each defendant objected to his PSR's inclusion of numerous
specific facts.  The Court will not rule on each of these objections individually, as it is not
the Court's role to rewrite the PSR.  *See United States v. Reiss*, 186 F.3d 149, 156-57
(2d Cir. 1999) (explaining that district court is not required to "perform a line-by-line
review of the PSR").  If there are any specific issues that the parties think this Court

The defendants also moved to dismiss counts 3 and 4 as multiplicitous of count 5. Docket Items 1244 and 1245. The government has indicated that it "will move at sentencing to vacate the defendants' convictions on count [4] and request that the Court enter judgment [only] on count [5]." Docket Item 1258 at 3 (some capitalization omitted). Thus, the motions to dismiss count 4 appear to be moot. But the government asserts that this Court should maintain the convictions and sentence Lavon on both counts 3 and 5. *Id.* at 4-7.

For the reasons that follow, this Court denies the defendants' motions to dismiss and overrules their objections to the first-degree murder cross reference. The Court also overrules Lavon's objection to his criminal history category. With respect to relevant conduct, this Court finds by a preponderance of the evidence that each defendant is responsible for at least the amount of drugs the jury found beyond a reasonable doubt; that is: 5 kilograms or more of cocaine, 400 grams or more of fentanyl, and 100 grams or more of heroin. *See* Docket Item 1057 at 2-7. The Court further finds that in determining the defendants' sentences, it may consider drug quantities that were suppressed[4] and for which Lavon was acquitted in count 2. Finally,

---

should address and did not in this decision, the Court will hear from the parties and address those issues at sentencing.

[4] In 2022, this Court granted the defendants' motion to suppress a large quantity of drugs found in their car during a traffic stop in Tennessee. *See* Docket Item 573 at 5-25.

the Court grants the defendants' request to have the Probation Office calculate the drug

quantity that it deems relevant conduct for each defendant.[5]

The United States Probation Office shall revise the PSRs consistent with this

decision by **January 20, 2026**.  Each defendant shall file any objections to his revised

PSR (that were not already raised) by **January 23, 2026**.  The government may

respond by **January 26, 2026**.  And, if necessary, the Court will hear argument at the

defendants' sentencings on **January 28, 2026**.

## LEGAL PRINCIPLES

### I.    SENTENCING GUIDELINES CALCULATION

The now-advisory Guidelines, *see United States v. Booker*, 543 U.S. 220 (2005),

are the requisite starting point for a district court's determination of a sentence.  *See*

*Rita v. United States*, 551 U.S. 338, 350 (2007).  Under the Guidelines, a defendant's

sentencing range is calculated by determining a base offense level; applying any

adjustments to that level based on specific offense characteristics, the defendant's role

in the offense, and whether the defendant accepted responsibility for the offense; and

then factoring in the defendant's criminal history category.  *See* U.S.S.G. § 1B1.1(a).

### II.    EVIDENTIARY STANDARDS IN SENTENCING

Even though a defendant is adjudged guilty by the time of sentencing, the

defendant's due process rights are not checked at the courtroom door.  *See United*

---

[5] Because the Court overrules the objections regarding the first-degree murder
cross reference, it need not decide whether James is entitled to the minimal participant
reduction.

*States v. Pugliese*, 805 F.2d 1117, 1122 (2d Cir. 1986).  On the contrary, the sentencing

court must balance the defendant's procedural rights against the defendant's guilt and

the need to impose a fair punishment.  *See id.*

Under Federal Rule of Criminal Procedure 32, prior to sentencing, a court must

"rule on [any] dispute [regarding the PSR] or determine that a ruling is unnecessary

either because the matter will not affect sentencing[] or because the court will not

consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  A court is not required

to "perform a line-by-line review of the PSR," however, as long as it "resolve[s] the

substantive challenges" to it.  *United States v. Reiss*, 186 F.3d 149, 156-57 (2d Cir.

1999).

At a trial, the government must prove a defendant's guilt beyond a reasonable

doubt; at a sentencing hearing, on the other hand, the government must prove the

relevant facts only by a preponderance of the evidence.  *See United States v. Salazar*,

489 F.3d 555, 557 (2d Cir. 2007) (per curiam).  A sentencing court has broad discretion

in deciding what information to consider:  So long as the defendant is afforded an

opportunity to respond and information has some indicia of reliability to ensure that it is

likely accurate, that information is fair game, and the formal rules of evidence do not

apply.  *United States v. Concepcion*, 983 F.2d 369, 387-88 (2d Cir. 1992); U.S.S.G. §

6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing

determination, the court may consider relevant information without regard to its

admissibility under the rules of evidence applicable at trial, provided that the information

has sufficient indicia of reliability to support its probable accuracy.").  By the same

token, "[u]nreliable allegations shall not be considered" by the sentencing court.

U.S.S.G. § 6A1.3 cmt.  And if the reliability of certain information is challenged,

corroborating evidence can help the court determine whether the information is, in fact,

reliable.  *United States v. Romano*, 825 F.2d 725, 728-29 (2d Cir. 1987); *United States*

*v. Fatico*, 579 F.2d 707, 713 (2d Cir. 1978).

### III.    RELEVANT CONDUCT

"[I]n the case of a jointly undertaken criminal activity (a criminal plan, scheme,

endeavor, or enterprise undertaken by the defendant in concert with others, whether or

not charged as a conspiracy)," relevant conduct includes:

> all acts and omissions of others that were—
>
> > (i) within the scope of the jointly undertaken criminal
> > activity,
> >
> > (ii) in furtherance of that criminal activity, and
> >
> > (iii) reasonably foreseeable in connection with that
> > criminal activity[]
>
> that occurred during the commission of the offense of
> conviction, in preparation for that offense, or in the course of
> attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(B); *see also United States v. Molina*, 106 F.3d 1118, 1121 (2d

Cir. 1997) ("Under the relevant conduct principles of subsection 1B1.3(a)(1)(B), all

'reasonably foreseeable acts and omissions of others' in furtherance of the conspiracy

may be taken into account to determine a defendant's sentence.").

Thus, to determine relevant conduct with respect to jointly undertaken criminal

activity, "the district court must make two particularized findings."  *United States v.*

*Mulder*, 273 F.3d 91, 118 (2d Cir. 2001).  "First, it must determine 'the scope of the

criminal activity agreed upon by the defendant.'"  *Id.* (quoting *United States v. Studley*,

6

47 F.3d 569, 574 (2d Cir. 1995)).  "Second—and only if it finds that the scope of the

activity to which the defendant agreed was sufficiently broad to include the conduct in

question—the court 'must make a particularized finding as to whether the activity was

foreseeable to the defendant.'"  *Id.* (quoting *Studley*, 47 F.3d at 574).  With respect to

drug quantity, "[t]he defendant need not have actual knowledge of the exact quantity of

narcotics involved in the entire conspiracy; rather, it is sufficient if he could reasonably

have foreseen the quantity involved."  *United States v. Snow*, 462 F.3d 55, 72 (2d Cir.

2006).

### DISCUSSION[6]

I.     **MULTIPLICITY OF COUNTS 3, 4, AND 5**

   A.     **Dismissal of All Three Counts**

   In addition to their arguments regarding sentencing, the defendants argue that

government fundamentally violated their rights by charging counts 3, 4, and 5 as

separate counts.   *See, e.g.*, Docket Item 1276 at 13-14.  Therefore, they say, all three

counts should be dismissed.  *See id.*  This Court disagrees.

   The Second Circuit has held that "[w]here there has been no prior conviction or

acquittal, the Double Jeopardy Clause does not protect against simultaneous

prosecutions for the same offense, so long as no more than one punishment is

eventually imposed."  *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006).

Accordingly, when "[n]o convictions have been entered . . . , the Double Jeopardy

---

[6] The Court assumes the reader's familiarity with the factual background and will recount only those facts necessary to explain its opinion.

Clause's guarantee against multiple punishments for the same offense has not yet been triggered." *United States v. Polouizzi*, 564 F.3d 142, 157 (2d Cir. 2009); *see, e.g.*, *United States v. Mostafa*, 965 F.Supp.2d 451, 464 (S.D.N.Y. 2013) ("It is well established that the Double Jeopardy clause does not prohibit simultaneous prosecutions for the same offense; it prohibits duplicative punishment.  Accordingly, multiplicity is properly addressed by the trial court at the sentencing stage." (citation omitted)); *United States v. Burke*, 2011 WL 2609839, at *8 (E.D.N.Y. Feb. 26, 2011) (holding that where section 924(c) count was lesser-included offense of a section 924(j) charge, "overlap between the two counts [wa]s no bar to their simultaneous prosecution, and that [defendant] instead [was] entitled only to have the sentences on both counts merged in the event he [wa]s found guilty of both").

Moreover, the Court does not see any undue prejudice of charging overlapping offenses as separate counts as long as a defendant is not ultimately sentenced twice for the same offense.  In fact, as the government noted at oral argument, counts like these often are charged separately; and if the jury convicts on multiplicitous counts, the court chooses one on which to sentence.  *See United States v. Gillon*, 2023 WL 8177113, at *1 (2d Cir. Nov. 27, 2023) (summary order) (remanding to this Court to choose which conviction and sentence to vacate where defendant was sentenced on violation of 21 U.S.C. § 848 and lesser-included offense under 21 U.S.C. § 846).

### B.      Counts 3 and 5

There are two issues before the Court with respect to counts 3 and 5.  First, the parties dispute whether count 3 is a lesser-included offense of count 5.  *Compare* Docket Item 1245 at 6-7, *with* Docket Item 1258 at 4-7.  Second—and regardless of the

8

answer to the first question—the parties disagree about whether the Second Circuit's decision in *United States v. Barrett,* 102 F.4th 60 (2d Cir. 2024), *cert. granted in part*, 145 S. Ct. 1307 (2025), requires this Court to sentence Lavon on both counts. *Compare* Docket Item 1276 at 8-13, *with* Docket Item 1258 at 2-5.  The Court will address each issue in turn.

### 1.     Lesser-Included Offense

Count 3 charged Lavon with possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Docket Item 712 at 2-3. Count 5 charged him with discharging a firearm in furtherance of a drug trafficking crime causing death in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 924(j)(1)-(2).  Docket Item 712 at 3-4.  The government argues that counts 3 and 5 are "distinct" offenses because they consisted of different conduct, including different firearms.  *See* Docket Item 1275 at 2; Docket Item 1258 at 7.  Thus, the government says—even aside from its arguments under *Barrett*—this Court may sentence on both counts without running afoul of the Double Jeopardy Clause.  *See* Docket Item 1275 at 2.

Lavon counters that because counts 3 and 5 are based on the same predicate offense—the narcotics conspiracy charged in count 1—count 3 is a lesser-included offense of count 5.  *See* Docket Item 1271 at 32.  This Court agrees with him.

The Second Circuit has held that "the appropriate unit of prosecution under [section] 924(c)(1) is the predicate offense."  *United States v. Mejia*, 545 F.3d 179, 204-05 (2d Cir. 2008).  In other words, "[o]nly where the defendant commits multiple drug-trafficking crimes or violent crimes, and the government can link the firearms to those crimes, may the government prosecute for multiple violations of [section] 924(c)(1)."

9

*United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir. 1993) (citation omitted).  By

contrast, "[w]here the government links multiple firearms to a single crime, only one

[section] 924(c)(1) violation occurs."  *Id.*  Therefore, even if the government is correct

that the conduct underlying counts 3 and 5 is distinct, because they are based on the

same predicate offense—count 1—count 3 is a lesser-included offense of count 5.

### 2.    *United States v. Barrett*

That does not end the inquiry, however.  In its 2024 decision in *Barrett*, the

Second Circuit held that section "924(c)(1) and [section] 924(j) crimes are separate

offenses for which Congress has clearly authorized cumulative punishments . . . even

when . . . the defendant's [section] 924(c) firearms predicate count is a lesser-included

offense of his [section] 924(j) murder count."  102 F.4th at 89.  So *Barrett* precludes

Lavon's argument that count 3 should be vacated on Double Jeopardy grounds.  And—

unless and until the Supreme Court says otherwise—*Barrett* is binding on this Court.

Lavon notes that "*Barrett* does not address—and does not disturb—the *separate*

line of Second Circuit precedent governing multiplicitous [section] 924(c) charges

predicated on the *same underlying offense* (here [c]ounts 3 & 4)."  Docket Item 1276 at

8.  Lavon is correct that counts 3 and 4—both section 924(c) charges based on the

same predicate offense—are multiplicitous, and this Court therefore could not sentence

him on both of them.  *See Mejia*, 545 F.3d at 204-05; *Lindsay*, 985 F.2d at 674.  The

government already has agreed to move to dismiss count 4, however.  *See* Docket Item

1258 at 3.  And Lavon's argument does not affect the viability of count 5, which charged

a violation of section 924(j).  *See Barrett*, 102 F.4th at 89.

Lavon also argues that the Supreme Court is likely to overturn *Barrett* in the coming months. *See* Docket Item 1276 at 12-13. He may well be correct. But rather than attempt to read the tea leaves, this Court is bound to follow Second Circuit precedent unless and until it is no longer good law. And if Lavon is correct and *Barrett* is ultimately overturned, his counsel has ably preserved that issue for appeal.

## II.   FIRST-DEGREE MURDER CROSS REFERENCE

Regarding the first-degree murder cross reference, the defendants argue that the government's evidence was insufficient to show the premeditation required for first-degree murder under 18 U.S.C. § 1111. *See* Docket Item 1249 at 7-20; Docket Item 1270 at 36-38; *see also United States v. Mulder*, 273 F.3d 91, 117 (2d Cir. 2001) (explaining that "premeditated killing . . . is murder in the first degree" (alteration in original) (quoting 18 U.S.C. § 1111(a)). This Court disagrees. In fact, the government presented ample evidence at trial that Kevin Turner's murder was not a heat-of-the-moment killing but rather a planned event. And that is especially so given the preponderance of the evidence standard that applies at sentencing. *See Salazar*, 489 F.3d at 557.

For example, Timothy Harris and Michelle Edwards testified that when Lavon and James came to their residence on the day of the shooting, Lavon asked whether Harris knew "a guy named Buffalo." *See* Docket Item 1073 at 9; Docket Item 1020 at 9-10. Harris later learned that "Buffalo" was one of Turner's nicknames. Docket Item 1073 at 19-20, 66. At Lavon's request, Harris and Edwards then took a ride in a truck with Lavon and James, who was driving. *See* Docket Item 1020 at 12-14. While they were riding around, Lavon asked Harris whether he knew of any "drug houses." Docket Item

1073 at 9; *see* Docket Item 1020 at 16.  After a short drive "around the corner," they

returned to the house where Harris and Edwards lived. *See* Docket Item 1073 at 9-11.

Edwards saw a gun on the front seat "[i]n between [Lavon] and [James]," and as she

exited the truck, she told Harris what she saw.  Docket Item 1020 at 17-18, 41-42;

Docket Item 1073 at 12-13.

Lavon then told Edwards "to give him a call" when they "purchased some drugs."

Docket Item 1020 at 19.  When they got back to their house, Edwards and Harris texted

Turner and asked him to bring them $20 worth of crack cocaine.  Docket Item 1073 at

13-14; Docket Item 1020 at 19-21.  At Edwards's direction, Harris then did what Lavon

had told them to do: he texted Lavon to "[c]ome now."  Docket Item 1073 at 15; *see*

Docket Item 1020 at 19-20.  Turner soon delivered the crack cocaine to Harris and

Edwards, and almost immediately after Turner left, Harris and Edwards heard four

shots.  Docket Item 1073 at 16; Docket Item 1020 at 22-23.  When they looked out their

window, they saw that Turner had been shot on their porch.  Docket Item 1073 at 16;

Docket Item 1020 at 22-23.

Additionally, video surveillance showed a pickup truck that Detective Troy Earp

testified belonged to James arriving at a Coastal gas station—approximately two blocks

from the murder scene and one block from Lavon's apartment—about 40 minutes

before the shooting.  *See* Docket Item 1026 at 70-71, 85-86, 95.  James went inside the

gas station; looked at the video monitors, which show all the angles of video

surveillance; and then exited the gas station without purchasing anything.  *See id.* at 93-

94.  And at approximately 4:28 p.m., a few minutes before the murder, other video

surveillance showed James's truck pulling into a Valero gas station about a block from

the shooting, stopping in the parking lot in front of a camera, and then pulling away.
*See id.* at 94-97.

All that suggests that Lavon did not kill Turner impulsively.  In particular, the fact
that Lavon told Edwards to contact him when she and Harris had purchased drugs, and
then arrived and killed Turner shortly after Edwards and Harris told him to "come now,"
shows some premeditation.  And with respect to James, the evidence of his driving
Lavon around with Harris and Edwards while they looked for drug houses and talked
about Turner, as well as the evidence of his countersurveillance at the gas stations,
show that he participated in the planning process—at least under the preponderance of
the evidence standard that applies at sentencing.

In sum, the government proved by at least a preponderance of the evidence that
Lavon and James were looking for Turner and devised a way to find him using Edwards
and Harris.  And the jury found beyond a reasonable doubt that Lavon killed Turner and
that James aided and abetted Lavon.  That is enough to apply the first-degree murder
cross reference.

## III.    RELEVANT CONDUCT

Because the Court overrules the objections to the first-degree murder cross
reference, the drug weight included in the defendants' relevant conduct does not impact
their Guidelines calculations.  But they nonetheless argue that drug weight still is an
important factor for this Court to consider in determining their sentences.  *See, e.g.*,
Docket Item 1271 at 9-10.  Because this Court agrees that the amount of drugs
attributable to each defendant might impact the sentencing factors under 18 U.S.C. §
3553(a), it weighs in on that issue.

13

As an initial matter, the Court rejects the defendants' argument that it cannot—or should not—consider evidence of the drug quantities that were suppressed or that were charged in count 2 on which Lavon was acquitted on venue grounds.  *See, e.g.*, Docket Item 1271 at 17-18.  As the defendants acknowledge, "[w]hile Amendment 826 [to the Guidelines] prohibits acquitted conduct from being used by federal judges in determining *offense levels* during their sentencing guidelines computations, federal judges can still consider acquitted conduct overall when determining the appropriate sentence."  *Id.* (emphasis added); *see* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *see also United States v. Tejada*, 956 F.2d 1256, 1258 (2d Cir. 1992) ("We hold that a sentencing judge should consider illegally obtained evidence where it was not seized expressly to enhance the sentence.").  Thus, the Court may consider drug quantities from the suppressed Tennessee stop and on which Lavon was acquitted on count 2—not in computing the Guidelines range—but in determining the appropriate sentence.

The Court further finds that based on the evidence presented at trial and the jury's verdict, both defendants are responsible for at least the minimum amount of drug weight that the jury found was reasonably foreseeable to them: 5 kilograms of cocaine, 400 grams of fentanyl, and 100 grams of heroin.  *See* Docket Item 1057 at 2-7.  The Court agrees with the defendants that it is not bound at sentencing by the jury's verdict: Unlike the inquiry on a Rule 29 motion, this Court is not required at sentencing to view the evidence in the light most favorable to the government; it is instead tasked with

14

evaluating the evidence independently.  That being said, the preponderance of the

evidence standard at sentencing is far lower than the beyond a reasonable doubt

standard applicable at trial and on a Rule 29 motion.  *See Salazar*, 489 F.3d at 557.

And the same evidence that caused this Court to deny the defendants' Rule 29 motions

with respect to the drug quantity amounts, *see* Docket Item 1237 at 4-14, leads this

Court to find those amounts supportable on an independent review—at least by a

preponderance of the evidence.

The defendants also argue that certain witnesses, such as Alphonso Diggs, were

not credible and that their testimony therefore should not be included in the PSRs.  *See,*

*e.g.*, Docket Item 1249 at 15-17.  This Court disagrees.  The Court heard that testimony

and will credit it for what the Court thinks it is worth.  But none of it was so

"fundamentally compromised," *see id.* at 16, that it should be excised from the PSR.[7]

The Court will, however, grant the defendants' request to have the Probation

Office calculate the drug weight that the office believes should be included in each

defendant's relevant conduct.  And, if necessary, the Court will hear and decide any

further objections to those calculations at the defendants' sentencings.

---

[7] The defendants rely on *United States v. Juwa*, 508 F.3d 694, 702 (2d Cir. 2007), to support their argument that "a sentencing court may not rely on uncorroborated statements from a witness whose credibility is fundamentally compromised."  Docket Item 1259 at 16 (citing *Juwa*, 508 F.3d at 702).  *Juwa* does not stand for the proposition cited and is inapposite.  There, the Second Circuit found that the district court had erred in relying on charges in a "bare-bones indictment" in the defendant's state case, which "without more, [wa]s insufficient to support a factual underpinning for sentencing purposes."  *Juwa*, 508 F.3d at 701.  The district court had opted not to consider a victim impact statement from the alleged victim in the state case following defense counsel's objection that the statement was "not [from] a victim of the federal offense."  *Id.* at 697.  That is entirely different than this Court's considering testimony of sworn witnesses whom the Court saw testify at the defendants' federal trial.

IV.   **LAVON'S CRIMINAL HISTORY CATEGORY**

The PSR gave Lavon seven criminal history points, placing him in Criminal History Category IV.  Docket Item 1241 at ¶¶ 63-64.  But, Lavon says, "if either [his] marijuana or menacing misdemeanor conviction was not counted, the resulting 6 points would move him into Criminal History Category III."  Docket Item 1249 at 35.  Thus, he says that his "criminal history calculation overrepresents the seriousness of his past record" and that he is entitled to a reduced criminal history category under U.S.S.G. § 4A1.3.  Docket Item 1249 at 35.  The government counters that "[s]urely, the downward departure calculated in [section] 4A1.3(b) was not intended for violent murderers with a history of drug trafficking."  Docket Item 1259 at 3-4.

Although this Court questions the government's contention that the current offense is relevant to the criminal history category, it also is not convinced that the PSR's calculation of Lavon's criminal history "significantly overrepresents the seriousness of [that] criminal history."  *See* U.S.S.G. § 4A1.3.  And regardless, as the government observes, *see* Docket Item 1259 at 4, because this Court overrules the objection to the first-degree murder cross reference, Lavon's Guidelines are the same whether his criminal history category is III or IV: life, *see* U.S.S.G. Ch. 5 Pt. A, Sentencing Table.  Thus, this Court overrules that objection to the PSR.

## CONCLUSION

For the reasons stated above, this Court denies the defendants' motions to dismiss and overrules their objections to the first-degree murder cross reference.  The Court also overrules Lavon's objection to his criminal history category.  With respect to relevant conduct, this Court finds by a preponderance of the evidence that each

defendant is responsible for at least the amount of drugs found by the jury beyond a

reasonable doubt; that is: 5 kilograms or more of cocaine, 400 grams or more of

fentanyl, and 100 grams or more of heroin.  *See* Docket Item 1057 at 2-7.  The Court

further finds that it may consider drug quantities that were suppressed and of which

Lavon was acquitted in count 2 not in computing the Guidelines range but in applying

the factors under 18 U.S.C. § 3553(a) and determining the appropriate sentence.  In its

revised PSRs, the Probation Office shall calculate what it finds to be the drug quantity

that qualifies as relevant conduct for each defendant.

The United States Probation Office shall revise the PSRs accordingly by

**January 20, 2026**.  The defendants shall file any additional objections to the revised

PSRs (that is, objections that were not already raised) by **January 23, 2026**.  The

government may respond by **January 26, 2026**.  If necessary, the Court will hear

argument at the defendants' sentencings on **January 28, 2026**.


SO ORDERED.

Dated:   January 13, 2026
         Buffalo, New York


                                             */s/ Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE